IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HEATHER GENERES,<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX, INC.,<br><br>    Defendant. | CIVIL ACTION NO.<br><br>_____ |

**COMPLAINT**

COMES NOW, Plaintiff Heather Generes, and hereby and pursuant to Fed. R. Civ. P. 3 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and files this Complaint alleging discrimination, and for good cause, shows the Court as follows

*Parties and Service of Process*

1. Equifax, Inc. ("Defendant" or "Equifax") is a global data, analytics and technology company that provides information solutions to individuals and businesses, primarily related to financial information such as credit monitoring and fraud prevention.

2. Equifax is a Georgia corporation that maintains its principal place of business at 1550 Peachtree Street NW, H46, Atlanta, Georgia, 30309-2402. At all

relevant times, Defendant maintained a Georgia office at 1550 Peachtree Street NW, H46, Atlanta, Georgia, 30309-2402.

3.  Equifax can be served through its registered agent, Corporation Service Company, for service of process at: 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

4.  Equifax has over 12,000 employees worldwide and its headquarters are located in Atlanta, Georgia.

5.  Plaintiff Heather Generes ("Plaintiff" or "Ms. Generes") is an individual who was employed by Defendant, working out of its Georgia office beginning in May, 2016 located at 1550 Peachtree Street NW, H46, Atlanta, Georgia, 30309-2402. On November 1, 2019, she began working at its Georgia office located at One Atlantic Center, 1201 West Peachtree Street, Atlanta, Georgia 30309. Ms. Generes resides at De which is within the Northern District of Georgia.

6.  Plaintiff consents to being a party to this action pursuant to 29 U.S.C. § 216(b).

***Jurisdiction and Venue***

7.  Jurisdiction is proper in this Court pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant's headquarters is located in Atlanta, Georgia.

9. Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 42 U.S.C. § 2000e-5(f)(3) because it is the judicial district where Plaintiff worked and where the unlawful employment practices occurred.

10. This action is timely filed within ninety (90) days after receiving a Right to Sue notice from the Equal Employment Opportunity Commission following the timely filing of a Charge of discrimination with the agency.

### *Ms. Generes's Position and Duties*

11. Ms. Generes began her employment at Equifax in May, 2016 as Senior Vice President, Chief Marketing Officer of the International Business Unit. She was originally recruited by Equifax into a high-ranking executive position and was included in Equifax's succession plan. Plaintiff was groomed for and was expected to obtain higher ranking positions within the organization.

12. As Senior Vice President, Chief Marketing Officer of the International Business Unit, Ms. Generes held a leadership role within one of the divisions of Equifax. She reported to the leadership team of Equifax, including Vice Presidents, the President and other officers of the company.

13. Ms. Generes consistently received favorable performance reviews during her time with Equifax and throughout her employment with Equifax, she expressed a desire to advance and move up in the corporate hierarchy.

14. During a serious data breach at Equifax, Plaintiff went above and beyond her call of duty and worked many long hours helping the company recover from the serious blow to its reputation.

15. During her approximately 3 years of employment at Equifax, Ms. Generes maintained an outstanding record of achievement and was considered a high performer.

16. Ms. Generes had many conversations with her superiors at Equifax where they had discussed her being part of the company senior leadership succession plan. She had no reason to believe that she was not being considered for promotion or other career advancement opportunities at Equifax.

17. Despite her performance, Ms. Generes's employment was impacted by Equifax's decision to eliminate the International Group, and she was scheduled to have her employment terminated.

18. Ms. Generes is not claiming the decision to terminate her employment as part of the elimination of the International Group was discriminatory or a pretext for discrimination, but rather contends that after the elimination of the International

Group, Equifax did not give her a fair or honest opportunity to apply for other positions within Equifax for which she was qualified.

19. On the day Ms. Generes learned that the International Group was going to be eliminated, she originally had a meeting scheduled with her superiors to discuss other open positions in the company to further her career.

20. Ms. Generes first realized Equifax's pattern of discrimination and pretextual conduct the same day she was informed of the elimination of the International Group. During that meeting she was told that there were no positions available at her level at the time. Ms. Generes knew this statement was false and told the managers who made the statement that she knew it was untrue and that there were other positions in the company for which she was qualified and should be allowed to apply.

21. When her job position was eliminated, Plaintiff inquired about open job positions at her level. Those open positions were concealed from her. Despite contrary statements by Equifax management, Ms. Generes knew of open positions within the company and met with human resources to ask to be considered for those openings.

22. When she attempted to apply for open jobs, she was asked how she found out about those positions.

23. Equifax tried to prevent Ms. Generes from applying for, or from being considered for, open positions within the company.

24. Eventually, Ms. Generes was terminated from her employment without being given the opportunity to apply for, or to be fairly considered for, open positions within the company for which she was qualified. At the time of her separation, Ms. Generes served as the Senior Vice President Chief Marketing Officer of the International Business Unit for Equifax.

25. Ms. Generes attempted to apply for the Chief Marketing Officer, USIS Division, but was unfairly discriminated against in the application and interview process.

26. Ms. Generes attempted to apply for the Senior Vice President, Strategy position, but was unfairly discriminated against in the application and interview process.

27. Ms. Generes attempted to apply for the Chief Product Officer position, but was unfairly discriminated against in the application and interview process.

28. Ms. Generes attempted to apply for other positions within Equifax, including any positions that Equifax was considering applicants for with her experience and background, but was unfairly discriminated against in the

application and interview process.

### *Equifax Concealed the Existence of Job Openings from Ms. Generes*

29. Despite her outstanding achievements as Senior Vice President Chief Marketing Officer, Equifax concealed job openings for which Ms. Generes was qualified. Ms. Generes was not informed of open positions despite her repeated requests to apply for any available position within Equifax at her level of skill and experience.

30. On the day that Plaintiff learned of the termination of the International Group, she was falsely informed that there were no open positions at the company.

31. Specifically, Ms. Generes was not told of two positions that were open at that time, Chief Marketing Officer, USIS and Chief Product Officer. She confronted the company once she learned of these open positions. Equifax's human resources representative stated that she was surprised that Ms. Generes was able to learn about the Chief Marketing Officer position.

32. On numerous occasions, Ms. Generes requested information about any job opportunities with Equifax. Ms. Generes expressed a willingness to be employed at jobs equivalent to her level, above her level, and at levels below where she had worked.

33. Ms. Generes explicitly and repeatedly asked to be considered for the

position of Senior Vice President, Strategy. She was dissuaded and misled about this position. Eventually a male was selected for this position.

34. As Ms. Generes's date of termination approached, she repeatedly requested that Equifax consider her for any available temporary projects, or other assignments that could keep her employed at Equifax.

35. Other similarly situated executives had been given similar opportunities to fill temporary roles or complete special projects until a suitable position could be found. Ms. Generes was not afforded this opportunity, despite her requests.

36. After her last day of employment with Equifax, Plaintiff learned that the company had new job openings in the Senior Vice President, Solutions Marketing position and in the interim CMO position, but she was never informed of these opportunities even though she repeatedly asked about open positions.

37. Ms. Generes applied for these positions by expressing her interest in being considered for any position available. Since Equifax was dishonest with her about the positions that were available, she was not given an opportunity to either apply for, interview for, or compete for positions that were open and available for which she was qualified.

38. Equifax eventually hired a white male for the position of Senior Vice

President, Strategy.

39. Equifax "hired" a white female for the position of Chief Marketing Officer, USIS, but the female was only employed at Equifax for less than a month and never relocated to Atlanta. After this hire failed, Equifax did not offer Ms. Generes the opportunity to apply for or to be considered for this position again.

40. On information and belief, based upon subsequent hires and changing of roles at Equifax, Ms. Generes contends there were other positions at Equifax that Defendant was either actively seeking to fill or in the planning stages of filling. These positions were ones for which Ms. Generes would have been qualified.

41. Equifax did not inform Ms. Generes of these other positions or their other efforts to recruit, interview, or employ individuals for positions for which Ms. Generes could have applied for and been considered for had Equifax not discriminated against her.

42. The events stated herein are not the only examples of discriminatory and pretextual treatment of Ms. Generes in her effort to apply for available positions. Rather, Equifax engaged in a continuing pattern of pretextual and dishonest behavior, with the intent of not giving Ms. Generes a fair opportunity to apply for, interview for, or compete for open positions within the company for

which she was qualified.

43. It was clear to Ms. Generes, she was discriminated against based on her gender (female) and race (Asian) because Equifax purposefully kept open positions within the company hidden from her. Her last day at Equifax was November 1, 2019.

44. Ms. Generes filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about March 12, 2020. The Charge was timely filed within 180 days of the adverse actions taken against her by Equifax.

45. On September 23, 2021, Ms. Generes received a Notice of Right to Sue.

46. This lawsuit is being filed within ninety (90) days of receiving the Notice of Right to Sue and is thus timely filed.

### COUNT I – TITLE VII DISCRIMINATION ON THE BASIS OF GENDER (FEMALE)

47. Plaintiff hereby incorporates Paragraphs 1 through 46 as though set forth in full herein.

48. Ms. Generes was discriminated against on the basis of her sex (female), when Equifax failed or refused to hire her, or to consider her for hire, to open positions available within the company for which she was qualified.

49. Equifax treated Ms. Generes differently on the basis of her gender from other similarly situated individuals seeking employment for executive level positions at Equifax.

50. Equifax's discriminatory conduct is not limited to those positions for which Ms. Generes was qualified and applied for, but also includes employment positions and opportunities within the company that were concealed from her, positions for which she was not permitted to apply for, and positions for which she expressed an interest in applying for but was not permitted to do so nor considered as an applicant.

51. Equifax's explanations for its employment decisions, including its explanations provided to Ms. Generes regarding the positions available for her to apply for, were and are pretextual.

52. Ms. Generes has been damaged as a direct and proximate result of Defendant's intentional, malicious, willful, wanton, and reckless or other violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended.

53. Equifax's conduct was intentional and/or in reckless disregard of Ms. Generes's federally protected rights.

54. Ms. Generes suffered emotional and mental distress as a proximate cause of the company's intentional discrimination against her in violation of Title VII. Ms. Generes is entitled to compensatory and punitive damages in an amount up to the statutory limit as determined by a jury of her peers.

55. Ms. Generes is entitled to an award of attorneys' fees and costs incurred in this action as allowed by statute.

**COUNT II – DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN AND/OR ETHNICITY**

56. Plaintiff hereby incorporates Paragraphs 1 through 55 as though set forth in full herein.

57. Ms. Generes was discriminated against on the basis of her national origin (Chinese) and/or ethnicity (Chinese American), when Equifax failed or refused to hire her, or to consider her for hire, to open positions available within the company for which she was qualified.

58. Equifax treated Ms. Generes differently on the basis of her national origin and/or ethnicity from other similarly situated individuals seeking employment for executive level positions at Equifax.

59. Equifax's discriminatory conduct is not limited to those positions for which Ms. Generes was qualified and applied for, but also includes employment positions and opportunities within the company that were concealed from her,

positions for which she was not permitted to apply for, and positions for which she expressed an interest in applying for but was not permitted to do so nor considered as an applicant.

60. Equifax's explanations for its employment decisions, including its explanations provided to Ms. Generes regarding the positions available for her to apply for, were and are pretextual.

61. Ms. Generes has been damaged as a direct and proximate result of Defendant's intentional, malicious, willful, wanton, and reckless or other violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended.

62. Equifax's conduct was intentional and/or in reckless disregard of Ms. Generes's federally protected rights.

63. Ms. Generes suffered emotional and mental distress as a proximate cause of the company's intentional discrimination against her in violation of Title VII. Ms. Generes is entitled to compensatory and punitive damages in an amount up to the statutory limit as determined by a jury of her peers.

64. Ms. Generes is entitled to an award of attorneys' fees and costs incurred in this action as allowed by statute.

WHEREFORE, Plaintiff hereby demands a TRIAL BY JURY, judgment against Defendant, and an award of damages in the form of:

(a) Back pay wages and employee benefits;

(b) Compensatory damages, including, but not limited to, emotional distress, damage to reputation, loss of enjoyment, damage to reputation, embarrassment, and accrued interest;

(b) Punitive Damages;

(c) Attorney's fees and litigation costs;

(d) Interest; and

(e) Such other and further relief in equity or law that may pertain.

Respectfully submitted: December 14, 2021.

**DELCAMPO GRAYSON LÓPEZ LLC**

*/s/ Randall D. Grayson*
RANDALL D. GRAYSON
Georgia Bar No. 306560
J. ANTONIO DELCAMPO
Georgia Bar No. 216815
DAX E. LÓPEZ
Georgia Bar No. 457888

5455 Chamblee Dunwoody Road
Dunwoody, Georgia 30338
(770) 481-0444
(770) 395-0806 FAX
tony@dglattorneys.com
rgrayson@dglattorneys.com
dax@dglattorneys.com
*Attorneys for Plaintiff*